No. 23-03202

# In the United States Court of Appeals for the Third Circuit

COINBASE, INC.

*Petitioner,*

*v.*

SECURITIES AND EXCHANGE COMMISSION,

*Respondent.*

On Petition for Review of
Securities and Exchange Commission
Docket No. 4-789

## BRIEF OF PARADIGM OPERATIONS LP AS AMICUS CURIAE IN SUPPORT OF PETITIONER

Kyle D. Hawkins
    *Counsel of Record*
William T. Thompson
Joshua P. Morrow
LEHOTSKY KELLER COHN LLP
408 W. 11th St., 5th Floor
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com
will@lkcfirm.com
josh@lkcfirm.com

*Counsel for Amicus Curiae*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 and Third Circuit L.A.R. 26.1, Paradigm Operations LP ("Paradigm") makes the following disclosure: (1) Paradigm has no parent corporation; (2) no publicly held corporation owns 10% or more of Paradigm's stock.

Dated: March 18, 2024

/s/ *Kyle D. Hawkins*

Kyle D. Hawkins

# Table of Contents

Corporate Disclosure Statement..........................................................................ii

Table of Authorities .........................................................................................iv

Identity & Interest of Amicus Curiae ..............................................................vii

Introduction & Summary of Argument ............................................................1

Argument..........................................................................................................4

I.     The SEC's Current Framework Is Incoherent for Crypto.....................4

     A.     Crypto assets differ fundamentally from securities assets. .........4

     B.     The SEC's current framework does not provide the public with useful disclosures about crypto assets.................................6

          1.     The SEC demands irrelevant information. .........................6

          2.     The SEC does not provide for disclosure of useful information. ..............................................................................8

II.     Crypto Projects That Attempt to Comply with the SEC's Incoherent Framework Fail..................................................................9

     A.     The SEC's once vaunted "model" path—"Form 10"—does not work. ...............................................................................10

     B.     The SEC's other path—"Reg A"—also does not work. ..............12

Conclusion......................................................................................................16

Certificates of Compliance ..............................................................................18

Certificate of Service .......................................................................................19

TABLE OF AUTHORITIES

Page(s)

**Statutes**

18 U.S.C. § 1350 ....................................................................................4

**Regulations**

17 C.F.R. § 210.4-10 ..............................................................................9

17 C.F.R. § 229.101 ...............................................................................6

17 C.F.R. § 229.105 ...............................................................................4

17 C.F.R. § 229.106 ...............................................................................8

17 C.F.R. § 229.202 ...............................................................................8

17 C.F.R. § 229.303 ...............................................................................6

17 C.F.R. § 229.401 ...............................................................................7

17 C.F.R. § 229.504 ...............................................................................7

17 C.F.R. §§ 230.251–.346 ..................................................................12

17 C.F.R. § 230.257 .............................................................................12

**Other Authorities**

*Block.one*, SEC Release No. 10714 (Sept. 30, 2019),
    https://tinyurl.com/yc86e3rs ........................................................11

CNBC Transcript: *SEC Chair Gary Gensler Speaks with CNBC's*
    *"Squawk Box" Today*, CNBC (Feb. 10, 2023),
    https://perma.cc/VM5J-PXFW..........................................................1

Daniel Kuhn, *Props Shutdown Throws Reg A+ Funding Model Into Limbo*, CoinDesk, (Aug. 17, 2021, 11:53 AM), https://tinyurl.com/bdhj9r8c ...................................................................15

Gary Gensler, *Getting crypto firms to do their work within the bounds of the law*, The Hill (Mar. 09, 2023, 12:45 PM), https://perma.cc/G9ZM-RKYF ......................................................6

Hester M. Peirce, Comm'r, SEC, *Token Safe Harbor Proposal 2.0* (Apr. 13, 2021), https://perma.cc/ESZ3-533E ................................8

Hiro Systems PBC, Annual Report (Form 1-K) (April 27, 2021), https://tinyurl.com/3afcnjnc...................................................13

Hiro Systems PBC, Annual Report (Form 1-K) (April 28, 2022), https://tinyurl.com/3nf6ttza ..................................................13

Order Instituting Cease-And-Desist Proceedings, CarrierEQ, Inc., D/B/A Airfox, SEC Release No. 10575 (Nov. 16, 2018), https://tinyurl.com/yu8rddbp...................................................10

Paradigm, *Due to SEC Inaction, Registration is Not a Viable Path for Crypto Projects* (Mar. 23, 2023), https://perma.cc/QFU7-R38R. ..............................................................................................3

Paradigm, *Lessons from Crypto Projects' Failed Attempts to Register with the SEC* (Mar. 23, 2023), https://perma.cc/W6WU-XFNG.................11

Paradigm, *The Current SEC Disclosure Framework Is Unfit for Crypto* (April 20, 2023), https://perma.cc/T74K-FXGY ...............................4

Props Project, *A Letter From Our CEO*, Medium, (Aug. 12, 2021), https://perma.cc/ZK4P-EFLM................................................14, 15

Rob Rosenblum, *SEC Needs To Support Crypto Gatekeepers* (Mar. 10, 2023, 10:29 AM), https://tinyurl.com/3nswh2t6 ...................................15

SEC, *Kraken to Discontinue Unregistered Offer and Sale of Crypto Asset Staking-As-A-Service Program and Pay $30 Million to Settle SEC Charges*, SEC Release No. 2023-25 (Feb. 9, 2023), https://perma.cc/VC2R-HAKR ....................................................................12

SEC, *On Today's Episode of As the Crypto World Turns: Statement on ShapeShift AG* (Mar. 5, 2024), https://perma.cc/P852-PFKQ..................1

SEC, *SEC Orders Blockchain Company to Pay $24 Million Penalty for Unregistered ICO*, SEC Release No. 2019-202 (Sept. 30, 2019), https://perma.cc/6TB9-FUEY ............................................................17

SEC, *Statement on Digital Asset Securities Issuance and Trading* (Nov. 16, 2018), https://perma.cc/4FC7-RB79 ...........................................11

SEC, *Two ICO Issuers Settle SEC Registration Charges, Agree to Register Tokens as Securities*, SEC Release No. 2018-264 (Nov. 16, 2018), https://perma.cc/E9HC-DQ67................................................10, 11

## IDENTITY & INTEREST OF AMICUS CURIAE

Paradigm Operations LP ("Paradigm") is an American investment firm that invests in crypto and related technologies at the frontier of innovation.[1] Paradigm has an interest in this case because Coinbase's Petition for Review addresses a fundamental obstacle to participants in the crypto market: The SEC's persistent refusal to issue clear rules and guidance governing crypto, tokens, and related trading platforms.[2] Instead, the SEC has initiated enforcement actions across the crypto sector—even though it has never explained the legal basis for the expansive authority it claims. The resulting uncertainty impacts the entrepreneurs that Paradigm backs, because it leaves them unsure of the law's requirements and unable to depend on the availability of judicial review. Paradigm has a strong interest in ensuring the SEC follows the law and operates consistent with both the letter and spirit of the Administrative Procedure Act and the Securities Exchange Act of 1934.

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). Petitioner and Respondent consent to the filing of this amicus brief. *See* Fed. R. App. P. 29(a)(2).

[2] We use "crypto" and "token" to refer to digital assets that are uniquely identifiable using cryptography and blockchain technology. We do not use that term to include traditional securities, such as shares in a corporation or interests in a partnership, that have been digitized or otherwise added to a blockchain (sometimes called "tokenized securities").

## INTRODUCTION & SUMMARY OF ARGUMENT

The SEC's "poorly conceived crypto policy" is "manifestly unsatisfying" because it only "adds to the ambiguity that hangs over the crypto world"—indeed, the SEC's inaction suggests "that ambiguity is exactly the result the Commission wants."[3] So say two sitting SEC Commissioners. Yet, SEC Chair Gary Gensler likes to admonish the industry and its users for failing to comply with rules that he argues are clear.[4] As Coinbase's Petition for Review shows, that blithe advice ignores two critical aspects of crypto.

First, to the extent that the SEC believes a given crypto asset even qualifies as a security, the SEC's current framework for registration and disclosure fails to achieve one of securities law's principal policy goals: to provide investors with the right mix of information. The current securities law framework presumes a centralized legal entity—an "issuer." The framework further presumes that this issuer makes business decisions (which impact the security's value) and can comply with disclosure

---

[3] SEC, *On Today's Episode of As the Crypto World Turns: Statement on ShapeShift AG* (Mar. 5, 2024), https://perma.cc/P852-PFKQ.

[4] In a recent interview, Chair Gensler argued that crypto firms "know how to register, it's just a form on our website," and that "[t]hey know how to do this. They are just choosing not to do it." First on CNBC: CNBC Transcript: *SEC Chair Gary Gensler Speaks with CNBC's "Squawk Box" Today*, CNBC (Feb. 10, 2023), https://perma.cc/VM5J-PXFW.

requirements (which keep the investing public informed). Securities depend on the issuer for their value and existence.

This framework simply doesn't work for crypto. Crypto assets do not depend on a centralized issuer. Instead, they are part of decentralized networks and communities that are not controlled by a single entity.

Crypto operates in a fundamentally different fashion than the securities space. Open and decentralized networks operate with increased transparency and without the need for network participants to place trust in directors and managers to run the network. Therefore, the SEC's current myopic focus on requiring an "issuer" to disclose certain information—such as its financial position or the biographies of its management—fails to provide digital asset holders with the information that is "material." Decentralization also eliminates the need for middlemen that can otherwise extract significant rents in centralized financial networks. As long as the SEC's registration process requires a centralized issuer, it will be incoherent for crypto assets, meaningful disclosures will not happen, and the public will not have access to the material information that it needs.

Second, the few crypto projects that have tried to comply with the SEC's claimed pathways to registration have all met failure in one form or another. In a series of early enforcement actions, the SEC initially urged projects to use "Form 10" as a pathway to registration. Despite once hailing this path as the model for compliance, the SEC now appears to have abandoned it, and the projects that tried the approach are now either defunct

or moribund. Other projects have attempted to use a registration exemption known as "Reg A." But that idea has also proved unworkable—another unsuccessful effort to fit the dodecahedron peg of crypto into the square hole of century-old securities laws.[5]

This unworkable status quo is why Coinbase petitioned the SEC to provide clarity on when crypto assets are securities, and to make crypto-specific rules—just as the agency has done for other industries (such as energy and banking). Crypto is currently a $2 trillion industry by market capitalization. An industry that large cannot escape regulatory oversight, and serious companies are making good-faith efforts to comply with an ill-fitting framework.

But compliance requires predictability. That is what Coinbase's petition for rulemaking seeks—strikingly, too, because it is not every day that a company asks the government to regulate *it*. The SEC's refusal to initiate a rulemaking continues its ad-hoc approach of regulation-by-enforcement, where attempts at compliance lead only to punishment. That is not a stable equilibrium.

This Court should vacate the SEC's denial and should order the SEC to undertake rulemaking for crypto.

---

[5] The issues explored in this brief are discussed in further depth in a series of articles that Paradigm published last year. *See* Paradigm, *Due to SEC Inaction, Registration is Not a Viable Path for Crypto Projects* (Mar. 23, 2023), https://perma.cc/QFU7-R38R.

ARGUMENT

## I.     The SEC's Current Framework Is Incoherent for Crypto.

As Coinbase's briefing illustrates (at 38-46), the current SEC disclosure framework—developed in the 1930s and designed to regulate securities issued by centralized companies for fundraising—makes no sense when applied to crypto assets. Crypto assets, after all, are fundamentally different from securities: they do not depend on an issuer for their value or continued existence, they carry inherent utility unrelated to a company's financial performance, and they can trade on disintermediated platforms. As a result, the SEC's current framework demands the disclosure of information irrelevant to crypto assets, while ignoring relevant information. So long as the SEC continues to assert broad (and unexplained) authority over crypto, this fundamental disconnect cries out for rulemaking.[6]

### A.     Crypto assets differ fundamentally from securities assets.

To see why the SEC's current framework makes no sense when applied to Coinbase, consider just three (among many) of the substantial differences separating crypto assets from securities:

***Crypto assets do not depend on an issuer.*** Securities are typically issued by a company to shareholders to raise capital. The shareholder owns a piece of the company. The SEC requires the company to disclose material

---

[6] This Part draws on an earlier Paradigm policy paper that addresses these issues in more depth. *See generally* Paradigm, *The Current SEC Disclosure Framework Is Unfit for Crypto* (April 20, 2023), https://perma.cc/T74K-FXGY.

information to its shareholders. *E.g.*, 17 C.F.R. § 229.105; 18 U.S.C. § 1350(a)–(b). Crypto assets, by contrast, do not depend on a centralized issuer. The owner of a crypto asset—unlike a shareholder in a company—has no enforceable rights to the assets or dividends of any company. While the dissolution of the issuer would mean that a security ceases to exist, a crypto asset can persist and continue to accrue value independent of the entity or person that created it.

*Crypto assets accrue value based on inherent or expected utility.* Securities fluctuate in value based on their issuer's financial performance. Publicly traded securities are priced according to predictions about future performance. Bond prices trade according to the issuer's creditworthiness. None of that is true for crypto assets. Instead, the value of crypto assets fluctuates based on inherent *or expected worth* measured in current or future utility. Simply put, people buy crypto because of how you can *use* it.

*Crypto assets can trade on disintermediated platforms.* Securities that are traded publicly are subject to archaic rules that encourage rent-seeking middlemen. For example, national securities exchanges require individual investors to use a broker-dealer who is a member of the exchange. But as Coinbase's petition explains (at 43-45), this and other requirements are impossible for crypto. That is because crypto intentionally cuts out those middlemen: crypto assets can be traded 24/7 on public blockchains without broker-dealers. This is a core difference from how securities work, because

the technology stack is different. Requiring crypto to have unnecessary intermediaries is akin to requiring electric cars to have gas tanks.

## B.    The SEC's current framework does not provide the public with useful disclosures about crypto assets.

Comparing crypto assets to securities is like comparing apples to algorithms. So it's no surprise that the information helpful to securities holders doesn't help crypto buyers. Chair Gensler's practice of chiding the crypto industry for failing to "file registration statements and make the required disclosures" ignores that the SEC's current paperwork doesn't tell anyone anything of much value about crypto.[7]

### 1.    The SEC demands irrelevant information.

Consider just three examples of unhelpful information the SEC insists crypto projects provide:

*Business and financial information.* The SEC's forms require a company that wishes to issue securities (a "registrant") to provide a detailed description of their business, including their "[r]evenue-generating activities, products and/or services." 17 C.F.R. § 229.101(c)(1)(i). Registrants also must provide "[m]anagement's discussion and analysis of financial condition and results of operations." 17 C.F.R. § 229.303. But as explained above, crypto's value is based on *inherent utility*—not a particular company's financial performance.

---

[7] Gary Gensler, *Getting crypto firms to do their work within the bounds of the law*, The Hill (Mar. 09, 2023, 12:45 PM), https://perma.cc/G9ZM-RKYF.

*Management information.* The SEC's forms further require a securities issuer to "describe the business experience during the past five years of each director, executive officer, [and significant employee]." 17 C.F.R. § 229.401(e)(1). That might be helpful information for someone who wants to invest in an asset that changes value based on the performance of those individuals—but it's useless for a crypto asset, which can thrive without a centralized management team. And oftentimes third-party contributors to a crypto project do more to enhance utility than the creators. In that sense, the SEC-mandated disclosures are not just useless—they're misleading, wrongly signaling outsized importance for individuals who might not matter.

*Use of proceeds.* Finally, the SEC demands registrants "[s]tate the principal purposes for which the net proceeds to the registrant from the securities to be offered are intended to be used." 17 C.F.R. § 229.504. But in many instances, it makes little sense for crypto projects to do so. For one thing, when crypto projects generate "net proceeds," they are often not controlled by a centralized issuer, but rather sent to a treasury controlled by a decentralized community. Moreover, many crypto assets are distributed in ways that do not generate proceeds at all. Take the example of Ethereum or other "proof of stake" blockchains that distribute rewards to validators who help process transactions on the network. No centralized entity receives proceeds in connection with these distributions. The same is true for "air dropped" tokens—that is, crypto assets distributed for free to individuals who use some application or contribute to the project itself.

**2.    The SEC does not provide for disclosure of useful information.**

What types of disclosures *would* be useful to crypto asset buyers? This has been the topic of much recent debate, including proposals from SEC Commissioner Hester Peirce.[8] Information relating to a network's governance, security, design, and utility—none of which the SEC addresses in a meaningful way—would all be material to crypto asset holders.

*Governance.* The SEC's forms devote significant attention to how the registering company is governed—whether its directors are independent, what shareholders' voting rights are, and so on. *E.g.*, 17 C.F.R. § 229.202. But crypto assets are governed foremost by their underlying code. Crypto buyers want to know different things than securities investors, such as how that code can be modified and when the asset might be "upgradeable." The SEC's current framework addresses none of these issues.

***Security and design.*** The SEC requires companies to disclose information about cybersecurity. *E.g.*, 17 C.F.R. § 229.106. But crypto assets are digital—and understanding a crypto asset requires understanding the underlying code. The SEC's current framework provides no useful information about how project code is designed, edited, and protected.

***Utility.*** Finally, because utility is the main driver of crypto's value, potential purchasers view information about use as highly material. For

---

[8] *E.g.*, Hester M. Peirce, Comm'r, SEC, *Token Safe Harbor Proposal 2.0* (Apr. 13, 2021), https://perma.cc/ESZ3-533E.

example, purchasers may wish to know what vendors accept a crypto asset. Or they might want to know what kinds of "smart contracts" a crypto asset can support. Likewise, purchasers are likely to view information about a crypto asset's current and future supply as highly material. For example: How many tokens are in the initial distribution? Will new tokens be created? How will they be distributed? The SEC's current disclosure framework does not address any of these issues.

*     *     *

There is plainly a disconnect between the SEC's current framework—grounded in public policy from the 1930s—and the crypto market. When that has happened in other industries, such as banking and oil-and-gas, the SEC has engaged in rulemaking. *E.g.*, 17 C.F.R. § 210.4-10. As Coinbase's Petition for Review demonstrates, there is every reason to do the same here.

## II.     Crypto Projects That Attempt to Comply with the SEC's Incoherent Framework Fail.

Chair Gensler has chastised crypto projects for failing to "come in and register," painting the entire sector as willfully non-compliant.[9] But many crypto assets are not securities at all, and thus outside the SEC's ambit. And, even for those crypto assets that may be securities, the SEC has offered no viable path to compliance. Instead, the SEC's current framework makes registration impossible for crypto projects. *Supra* Part I. That is why only a

---

[9] *See, e.g., supra* notes 4, 7.

handful of crypto projects have even *attempted* to "register" or otherwise qualify under existing SEC rules. Each of those projects ended in failure. Tracing the history of the projects that were required to register under "Form 10" or that were qualified under "Reg A" is like strolling through a graveyard. The upshot is that—even if a given crypto asset can be deemed a security—compliance with the SEC's registration framework is out of reach.

### A.    The SEC's once vaunted "model" path—"Form 10"—does not work.

Early attempts to register with the SEC were the result of conditions that the agency imposed in enforcement actions against crypto projects that had conducted an "initial coin offering" ("ICO"). The SEC charged these projects with offering and selling unregistered securities.[10] As part of an agreement to settle those charges, each project agreed to "[f]ile a Form 10."[11]

When the SEC first announced these settlements, it touted Form 10 as "a model for companies that have issued tokens in ICOs and seek to comply with the federal securities laws."[12] The SEC even pointed to the settlements

---

[10] The SEC did not charge any of these projects with fraud or other substantive offense. Instead, each offense was only a failure to register.

[11] *E.g.*, Order Instituting Cease-And-Desist Proceedings, *CarrierEQ, Inc., D/B/A Airfox*, SEC Release No. 10575, at 8 (Nov. 16, 2018), https://tinyurl.com/yu8rddbp.

[12] SEC *Two ICO Issuers Settle SEC Registration Charges, Agree to Register Tokens as Securities*, SEC Release No. 2018-264 (Nov. 16, 2018), https://perma.cc/E9HC-DQ67 ("ICO Settlement Announcement").

as evidence "demonstrate[ing] that there is a path to compliance with the federal securities laws going forward."[13] None of that was accurate. Companies cannot disclose information that they do not have, and they should not need to disclose irrelevant information that might mislead investors. *See supra* Part I.B. Yet that is exactly what Form 10 registration ends up entailing.

All six projects that the SEC required to file Form 10 have now met failure in one form or another.[14] So it is unsurprising that despite first hailing Form 10 as a "model" path for crypto projects to come into compliance, the SEC now appears to have abandoned it.[15] For instance, the SEC's settlement with Block.one *did not* include any registration requirement at all.[16] That is worth noting, since Block.one "raised the equivalent of several billion dollars

---

[13] SEC, *Statement on Digital Asset Securities Issuance and Trading*, (Nov. 16, 2018), https://perma.cc/4FC7-RB79.

[14] Those projects are: CarrierEQ Inc. (dba "Airfox"), Paragon Coin, Inc., Gladius Network, Blockchain of Things, Inc., Enigma MPC and Salt Blockchain Inc. Each project is discussed more in depth in: Paradigm, *Lessons from Crypto Projects' Failed Attempts to Register with the SEC* (Mar. 23, 2023), https://perma.cc/W6WU-XFNG.

[15] ICO Settlement Announcement, *supra* note 12.

[16] Order Instituting Cease-And-Desist Proceedings, *Block.one*, SEC Release No. 10714 (Sept. 30, 2019), https://tinyurl.com/yc86e3rs.

over approximately one year"—an order of magnitude *more* than all six projects that followed the SEC's instructions to file a Form 10 *combined*.[17]

Suggesting companies follow a path to perdition as the only way forward is not regulatory clarity. Companies should not be asked to throw money and time on a pyre because the SEC refuses to engage in rulemaking. Responding to technological change may be hard but it is necessary.

Recent settlements against defendants alleged to have undertaken an unregistered offer and sale of securities also lack any requirement for the defendants to register on Form 10.[18] If Form 10 really were a path to compliance, as the SEC once argued, it is hard to understand why the SEC itself so quickly abandoned that path. In reality, Form 10 was never a viable avenue for compliance, and it still isn't.

### B.    The SEC's other path—"Reg A"—also does not work.

After the notable failures associated with Form 10, some industry observers coalesced around another path: "Reg A." This process allows companies to exempt themselves from the Form S-1 requirements by

---

[17] SEC, *SEC Orders Blockchain Company to Pay $24 Million Penalty for Unregistered ICO*, SEC Release No. 2019-202 (Sept. 30, 2019), https://perma.cc/6TB9-FUEY.

[18] SEC, *Kraken to Discontinue Unregistered Offer and Sale of Crypto Asset Staking-As-A-Service Program and Pay $30 Million to Settle SEC Charges*, SEC Release No. 2023-25 (Feb. 9, 2023), https://perma.cc/VC2R-HAKR.

qualifying under a slimmed down process that again uses an easier form, known as "Form 1-A." *See* 17 C.F.R. §§ 230.251–.346.

But the Reg A process has several constraints that make it unworkable. Companies that use Reg A are still subject to "[p]eriodic and current reporting" requirements, similar to registered offerings. 17 C.F.R. § 230.257. These kinds of updates are not possible for the many crypto projects that operate using a decentralized model, where there may not even be a manager who could make the reports. They also hamper innovation, because they require projects to jump over disclosure hurdles before iterating their products. It is thus unsurprising that Reg A has not lived up to expectations.

Consider Hiro, which makes tools that allow developers to build applications for the Bitcoin token. Hiro's own $40 million offering of "Stacks Tokens" was the first "Reg A" offering that the SEC approved, in 2019. Although Hiro used Reg A, it did not intend Stack Tokens to be treated as securities forever. Instead—like many crypto projects—it planned to move towards decentralization. Hiro's offering paperwork made clear that Hiro's board would be "responsible for regularly considering and ultimately determining whether the Stacks Tokens no longer constitute securities."[19] And in 2021—relying on advice from its "outside securities counsel"— Hiro's Board voted to "no longer treat the Stacks Tokens as securities."[20]

---

[19] Hiro Systems PBC, Annual Report (Form 1-K) 3 (April 27, 2021), https://tinyurl.com/3afcnjnc.

[20] *Id.* at 6.

But it is not clear the SEC is on the same page as Hiro's board. In a recent annual report, Hiro disclosed that it "is responding to an inquiry from the [SEC's] Division of Enforcement" related to its decision to no longer treat the Stacks Tokens as securities.[21] That kind of uncertainty is common in crypto markets. While the SEC acknowledges that crypto can morph from a security into something else, it has never given guidance about how it makes that determination. Until the SEC clarifies the point of "transformation," other crypto projects will end up in the same twilight zone as Hiro.

YouNow has a similar story. It is a live-broadcasting service that allows users to stream live video and to interact with each other in real time. The SEC approved a Reg A offering for YouNow around the same time that it gave approval to Hiro. The approval allowed YouNow to distribute a token called "Props," which it gave as a reward to people who used its service.

But just a few years after the offering, YouNow announced that the Props token no longer had a "viable future" due to "the regulatory constraints under which Props is operating."[22] The company explained that the token's "status as qualified securities significantly limits our ability to respond to changing market conditions in a commercially feasible

---

[21] Hiro Systems PBC, Annual Report (Form 1-K) 6 (April 28, 2022), https://tinyurl.com/3nf6ttza.

[22] Props Project, *A Letter From Our CEO*, Medium, (Aug. 12, 2021), https://perma.cc/ZK4P-EFLM.

manner."[23] The company also noted that the Reg A "require[d] [it] to make public filings and often get prior regulatory approval for product changes."[24]

"As a result," YouNow concluded that it was "unable to follow anything remotely like proper product development of 'launch, measure, iterate,' and struggle[d] to launch new key functionalities."[25] YouNow also noted that "no U.S. exchange has been able to list crypto assets such as the Props Token, which has hindered holders wishing to trade them."[26] Thus, YouNow concluded, it could not "develop Props Tokens in ways that could lead to commercial success, and there is no reasonable prospect of that happening in the future, given the regulatory framework."[27]

After Reg A worked so poorly for Hiro and YouNow, industry observers began to question "the viability of Reg A for token founders."[28] Indeed, even Hiro's former outside counsel (who was also a former SEC lawyer) concluded that crypto projects "are punished for seeking to comply" with the SEC's framework and that "[t]he SEC needs to meaningfully engage with the crypto industry and provide clear guidance not only on what is not

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Daniel Kuhn, *Props Shutdown Throws Reg A+ Funding Model Into Limbo*, CoinDesk, (Aug. 17, 2021, 11:53 AM), https://tinyurl.com/bdhj9r8c.

permitted, but also on what is permitted."[29] The SEC still has not done that. Until it does, even those crypto projects that wish to comply with the agency's requirements will be unable to do so.

*    *    *

We end where we began. Chair Gensler tells crypto companies to file registration statements and make the required disclosures. But the current framework is incoherent. The SEC appears to have abandoned the Form 10 pathway. Reg A doesn't work. All Coinbase asks is that the SEC explain what century-old securities laws require of this young two-trillion-dollar industry that deeply desires to comply with the law. That is how administrative law is supposed to work. The Court should not permit the SEC to continue to have it both ways. Coinbase is asking for an extraordinary remedy, but it is warranted because of this very extraordinary situation: the SEC is a regulator that is refusing to engage in regulation.

## CONCLUSION

The Court should vacate the agency's denial of Coinbase's rulemaking petition and remand with instructions for the SEC to engage in rulemaking.

---

[29] Rob Rosenblum, *SEC Needs To Support Crypto Gatekeepers*, Law360 (Mar. 10, 2023, 10:29 AM), https://tinyurl.com/3nswh2t6.

Dated: March 18, 2024

/s/ *Kyle D. Hawkins*

Kyle D. Hawkins (TX Bar No. 24094710)
  *Counsel of Record*
William T. Thompson
Joshua P. Morrow
LEHOTSKY KELLER COHN LLP
408 W. 11th St., 5th Floor
Austin, TX 78701
(512) 693-8350
kyle@lkcfirm.com
will@lkcfirm.com
josh@lkcfirm.com

*Counsel for Amicus Curiae*

## CERTIFICATES OF COMPLIANCE

1. This brief complies with the word limit of Federal Rule of Appellate Procedure 29(a)(5) because—excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f)—this document contains 3,707 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word 2021.

3. I certify that the text of this electronic brief is identical to the text in the paper copies. *See* 3d Cir. L.A.R. 31.1(c).

4. I certify that a virus detection program (Bitdefender version 3.17) has been run on the file and that no virus was detected. *See* 3d Cir. L.A.R. 31.1(c).

5. I certify that I am a member of the bar of this Court. *See 3*d Cir. L.A.R. 28.3(d).

Dated: March 18, 2024                    */s/ Kyle D. Hawkins*
                                          Kyle D. Hawkins

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have consented to electronic notification.

*/s/ Kyle D. Hawkins*

Kyle D. Hawkins